**19-4001-MJ-BECERRA**

AO 442 (Rev. 11/11) Arrest Warrant  ~~FBI~~   ~~SERVED~~

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>**CHRISTOPHER KNIGHT**<br><br>_Defendant_ | Case No. 19cr711-2 |

**RECEIVED DEC 1 2 2019**

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

_(name of person to be arrested)_   **CHRISTOPHER KNIGHT**,
who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

18:1349 - CONSPIRACY TO COMMIT SECURITIES FRAUD - 1 COUNT
18:1348 - SECURITIES FRAUD - 1 COUNT
18:2 - AIDING AND ABETTING

Date:     1.2/12/2019

_Issuing officer's signature_
KEVIN EIBEL, SUPERVISOR

City and state:   PHILA., PA.

KATE BARKMAN, CLERK OF COURT
_Printed name and title_

---

**Return**

This warrant was received on _(date)_ _____, and the person was arrested on _(date)_ _____
at _(city and state)_ _____

Date: _____

_Arresting officer's signature_

_Printed name and title_

FILED BY YR D.C.
Dec 13, 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

19-4001-MJ-BECERRA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Filed Under Seal

| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
|---|---|---|
| v. | : | DATE FILED: _____ |
| JOSEPH FABIILLI<br>CHRISTOPHER KNIGHT | :<br>:<br>:<br>: | VIOLATIONS:<br>18 U.S.C. § 1349 (conspiracy to commit securities fraud – 1 count)<br>18 U.S.C. § 1348 (securities fraud – 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of forfeiture |

## INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

Relevant Individuals and Entities

1. First Power and Light LLC ("FPL") was a Delaware limited liability company with its principal place of business in Bridgeport, Pennsylvania. FPL was formed in approximately July 2012. Person #1 was the nominal president of FPL. FPL was a solar installation and sales company. In or about April 2015, FPL changed its name to Volt Solar LLC, incorporated in Maryland with an address maintained in Bridgeport, Pennsylvania.

2. First Power and Light Inc. ("FPL Inc.") was incorporated in the State of Florida on or about July 1, 2013. FPL Inc. had an office in Bridgeport, Pennsylvania. Person #1 was the nominal president of FPL Inc. Unlike FPL, FPL Inc. was a solar power company in name only, with no active business or contracts.

3. Person #2 exercised control over FPL and FPL Inc.

4. Person #3 was a stock promoter. Person #3, who was not a licensed Financial Industry Regulatory Authority ("FINRA") investment broker, promoted penny stock companies using various business names under his control, including Quantum Financial Investments ("QFI"), in which Person #3 was a co-owner.

5. Person #4 was a co-owner of QFI, who worked at QFI in Glen Cove, New York, promoting stocks. Person #4 was not a licensed FINRA investment broker.

6. Neoterra Enterprises, LLC ("Neoterra") was a New York limited liability company with its principal place of business in Woodstock, New Jersey. Neoterra was formed in 2010. Person #3 was the principal of Neoterra. Neoterra had no known legitimate business purpose.

7. J.E. Consulting Corp. ("J.E. Consulting") was a New York corporation with its principal place of business in Thornwood, New York. J.E. Consulting was formed in 2012. Person #4 was the principal of J.E. Consulting. J.E. Consulting had no known legitimate business purpose.

8. Defendants JOSEPH FABIILLI and CHRISTOPHER KNIGHT together owned and operated Program Funding Advisors LLC ("PFA"), a Delaware limited liability company with its principal place of business in Old Brookville, New York. PFA was formed in approximately January 2012. Person #5, defendant FABIILLI's wife, was the president of PFA. PFA was in the business of advising businesses on how to promote stock.

9. Mainstream Entertainment, Inc. ("MSEI") was a Florida corporation with its principal place of business in Orlando, Florida. MSEI is now known as Volt Solar Systems, Inc. MSEI was owned by Person #6's son, Person #7.

### The Federal Securities Laws and SEC Rules and Regulations

10. Initially, the shares of MSEI were "restricted" pursuant to statute and rules and regulations promulgated by the Securities and Exchange Commission ("SEC"). The SEC was an independent agency of the United States government charged by law with preserving honest and efficient markets in securities. The federal securities laws, regulations, and rules were designed to ensure that the financial information of publicly traded companies was accurately recorded and disclosed to the investing public.

11. The MSEI shares were restricted in the sense that they could not be resold in the public market. Restricted securities are, generally, securities acquired in unregistered, private sales. If one wishes to sell restricted securities to the public, certain conditions must, generally, be met, including having current information about the issuing company available to the public. In order to have the restriction removed, Person #2 enlisted the services of Person #8, a lawyer, who agreed to issue a false opinion letter to the effect that certain conditions had been satisfied for the removal of the restriction.

### The Conspiracy

12. From at least in or about April 2012, through at least in or about May 2014, in the Eastern District of Pennsylvania and elsewhere, defendants

**JOSEPH FABIILLI and
CHRISTOPHER KNIGHT**

3

together with Person #2, Person #3, Person #4, Person #6, Person #9, Person #10, Person #11, and others known and unknown to the grand jury, conspired to commit offenses against the United States, namely, securities fraud, that is, to knowingly and intentionally execute a scheme and artifice (a) to defraud any person in connection with any security of Mainstream Entertainment, Inc., n/k/a Volt Solar Systems, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)), and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of Mainstream Entertainment, Inc., n/k/a Volt Solar Systems, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)), in violation of Title 18, United States Code, Section 1348.

## Purposes of the Conspiracy

13. The purposes of the conspiracy were to: (a) defraud the investors; (b) fraudulently obtain investor monies and pay and receive undisclosed commissions; (c) artificially inflate the value of MSEI securities; and (d) enrich the schemers.

## Manner and Means

It was part of the conspiracy that:

14. In or about 2012, Person #9 introduced Person #2 to Person #6. Person #6 was interested in selling MSEI. On or about September 20, 2012, FPL executed a stock purchase

agreement, whereby it became the majority shareholder of MSEI for $50,000. Related to this transaction, Person #2 also received 50 million shares of MSEI.

15. Thereafter, Person #2 distributed the 50 million shares of MSEI. Among other things, Person #2 distributed 35 million shares to his girlfriend, Person #12, so that he could maintain control over the company. Person #2 also distributed 7.5 million shares to Person #9 and Person #9's two sons, Person #10 and Person #11. The remaining 7.5 million shares were distributed by Person #2 to his associates and to employees of his companies, including Person #13 and Person #14.

16. The conspirators directed the drafting of and drafted false and fraudulent press releases and other communications relating to MSEI and its parent company, FPL, for the purpose of convincing the investing public that FPL and MSEI had more business and were more valuable than they, in fact, were, and to inflate the price of the stock of MSEI. In addition, the conspirators created and disseminated false and fraudulent press releases and prepared and disseminated a Form 8-K securities disclosure filed with the SEC on or about February 8, 2013, all as part of the conspiracy to fraudulently inflate the price of the common stock of MSEI.

17. The conspirators used manipulative stock trading techniques to fraudulently inflate the price of MSEI stock.

18. The conspirators used stock promoters, and non-arms-length trading with related parties, to create the illusion of volume, in order to inflate the stock price and to sell their own shares at inflated prices.

19. The conspirators ensured that any time they wanted to sell free trading shares on the open market, there would be available buyers.

20. Defendants JOSEPH FABIILLI and CHRISTOPHER KNIGHT, as well as their company, PFA, fraudulently promoted MSEI stock. Defendants FABIILLI and KNIGHT, in turn, directed Person #3 and Person #4 to operate what is known as a "boiler room," in which, among other things, Person #3, Person #4, and other co-conspirators, known and unknown to the grand jury, cold-called potential investors, for the purpose of getting them to buy shares of MSEI. Among other things, defendants FABIILLI and KNIGHT paid Person #3 and Person #4 undisclosed commissions for selling shares of MSEI, which Person #3 and Person #4 directed to be paid to QFI, Neoterra, and J.E. Consulting.

21. The boiler room promoters touted MSEI using high pressure sales tactics and misrepresentations about the value of MSEI and its stock.

22. The boiler room promoters did not disclose the commissions paid to them by other conspirators on the sale of MSEI stock to investors on the open market.

23. To conceal the payment of undisclosed commissions, conspirators commonly directed the transfer of such money to PFA to avoid the appearance of a direct payment from other conspirators to Person #3 and Person #4.

24. Conspirators received shares, both restricted and free-trading, of MSEI stock to compensate conspirators for participating in the scheme.

25. The conspirators planned to obtain and obtained money by inflating the volume of trading in and the price of MSEI stock through misleading marketing and stock manipulation, and by preventing the SEC from detecting the scheme or taking regulatory enforcement action against them.

26. Person #6 received approximately $989,362 in illicit proceeds from the sale of MSEI stock. Person #6, or entities controlled by Person #6, sent wire transfers of approximately $685,608 to PFA, which was controlled by defendants JOSEPH FABIILLI and CHRISTOPHER KNIGHT.

27. Person #2 paid kickbacks related to transactions in MSEI stock of approximately $843,007 to PFA, which was controlled by defendants JOSEPH FABIILLI and CHRISTOPHER KNIGHT.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1–11 and 14–27 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From at least in or about April 2012, through at least in or about May 2014, in the Eastern District of Pennsylvania and elsewhere, defendants

**JOSEPH FABIILLI and
CHRISTOPHER KNIGHT**

knowingly and intentionally executed a scheme and artifice (a) to defraud any person in connection with any security of Mainstream Entertainment, Inc., n/k/a Volt Solar Systems, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)), and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of Mainstream Entertainment, Inc., n/k/a Volt Solar Systems, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)).

All in violation of Title 18, United States Code, Sections 1348 and 2.

## NOTICE OF FORFEITURE

THE GRAND JURY FURTHER CHARGES THAT:

1. As a result of the violations of Title 18, United States Code, Sections 1348 and 1349, defendants

**JOSEPH FABIILLI and
CHRISTOPHER KNIGHT**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of at least $1,528,615.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
**GRAND JURY FOREPERSON**

*[signature]*
**WILLIAM M. MCSWAIN**
**UNITED STATES ATTORNEY**